Robert M. Barta (SBN: 108205)
Gregory T. Goldberg (SBN: 349139)
rbarta@bartatate.com
ggoldberg@bartatate.com
**BARTA | TATE**
1801 Century Park East, Suite 1200
Los Angeles, California 90067
Telephone: (310) 479-1454
Facsimile: (310) 478-1439

Attorneys for Defendants
ZERO GRAVITY MANAGEMENT,
MARK WILLIAMS and ERIC WILLIAMS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KURT MCLEOD, an individual,<br><br>           Plaintiff,<br><br>     v.<br><br>ZERO GRAVITY MANAGEMENT, an unknown business entity; MARK WILLIAMS, an individual; ERIC WILLIAMS, an individual; and DOES 1-50, inclusive,<br><br>           Defendants. | Case No. 2:22−cv−01547 FWS-AGR<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    November 30, 2023<br>Time:    10:00 AM<br>Dept.:   10D<br><br>Hon. Fred W. Slaughter<br><br>Complaint Filed:    March 8, 2022 |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. DISCUSSION ........................................................................................................ 1

    A. McLeod Does Not Address, Let Alone Establish, the Essential Elements of a Claim for Breach of Contract........................................... 2

        i. McLeod Cannot State a Breach of Contract Claim Against Mark ................................................................................................ 2

        ii. The Oral Agreement Contained No Express Fiduciary Terms ... 3

        iii. Mark Negotiated His Producer Fee in Good Faith ...................... 3

    B. McLeod Does Not Establish That Mark Owed a Fiduciary Duty or That a Fiduciary Duty Was Breached ...................................................... 4

        i. McLeod's Breach of Fiduciary Duty Claim Is Baseless ............. 5

        ii. Mark Received Due Credit for Creating Police Station .............. 6

    C. McLeod Fails to Meet His Burden to Establish a Breach of the Implied Covenant of Good Faith and Fair Dealing as a Matter of Law ............. 7

    D. McLeod Has Not Satisfied His Burden to Proceed on a Claim of Fraud or Concealment ........................................................................................ 8

    E. McLeod's Allegations Sounding in Quantum Meruit are Unsupported .............................................................................................................. 10

III. CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 1

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................. 2, 4, 7, 8

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 37 (2008) .................... 5

*Kangarlou v. Progressive Title Co., Inc.*, 128 Cal. App. 4th 1174 (2005) ................. 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .............. 1, 3

## I. INTRODUCTION

McLeod's Opposition (the "Opposition") to Defendants' Motion for Summary Judgment (the "Motion") declines to make a *bona fide* legal argument. With just a single oblique reference to an opinion cited in the Motion, McLeod eschews legal authority, and instead attempts a scattershot effort to raise a series of alleged factual disputes. But unsupported conclusions, bombastic rhetoric, and scare quotes are no substitutes for legal analysis. The Opposition is fatally flawed in that (a) it fails to meet McLeod's burden to adduce facts establishing the essential elements of McLeod's claims, and (b) it fails to elucidate why any of the alleged factual disputes are material.

## II. DISCUSSION

According to *Anderson*:

> As to materiality, the **substantive law** will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted . . . . [W]hile the materiality determination rests on the substantive law, **it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs** . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (Emphasis added).

McLeod's Opposition is devoid of substantive law. Accordingly, the Opposition fails to meet its burden, and should not be permitted to proceed to trial. (*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### A. McLeod Does Not Address, Let Alone Establish, the Essential Elements of a Claim for Breach of Contract.

McLeod cannot be permitted to proceed to trial on a breach of contract claim because McLeod fails to establish the essential elements. (*See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). It remains undisputed that after McLeod's two-year, written representation agreement ("RA") lapsed in March 2013, ZGM continued serve as McLeod's manager pursuant to an oral agreement. (Dkt. 40 at 12). McLeod brings forward no evidence to establish the terms of the oral agreement. Moreover, McLeod expressly denies that either he or ZGM remained bound by the terms of the RA after it lapsed. (Ex. 10 at 65:12-14, 68:5-6). Because McLeod fails to establish (a) the terms of the oral agreement, or (b) how the contract was allegedly breached, McLeod cannot satisfy his burden.

#### i. Mark Breached No Contract

The discovery record is replete with evidence that Mark was a producer on *Copshop*, not McLeod's manager. First, Mark expressly denies having served as McLeod's manager. (Ex. 20 at 45:1-2; Ex. 3). Second, the lapsed RA expressly reserved ZGM's right to produce McLeod's projects. (Ex. 1). Third, McLeod did not meet Mark until Eric introduced McLeod to Mark in 2012, more than a year after McLeod signed the RA, and several months after McLeod completed his *Police Station* draft. (Ex. 10 at 27:3-16). They spoke in Mark's capacity as a producer, because, according to McLeod, "[Mark] had found a director who he believed was the best option available to direct the film *Copshop*, to attach to the

2
REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

film." (*Id.* at 28:6-8). Fourth, in 2014 and 2016, McLeod signed an Option Agreement and an Amendment to same with Mark Williams Films, LLC, the production arm of ZGM. (Ex. 7-8). Fifth, Mark performed the duties of a producer on *Copshop*, not limited to recruiting Gerard Butler and Sculptor, and he was a credited producer. (Ex. 3 at 2-3; Ex. 10 at 189:4-5).

Against this substantial weight of evidence, McLeod offers nothing more than a disputed, alleged, uncorroborated statement by Mark. (Ex. 10 at 64:7; Ex. 20 at 145:12-17). But McLeod must, "do more than simply show that there is some metaphysical doubt," about Mark's role as a producer on *Copshop*. *(See Matsushita*, 475 U.S. at 586).

### ii. The Oral Agreement Contained No Express Fiduciary Terms

McLeod appears to argue that McLeod's alleged claim for breach of fiduciary duty sounds in contract. (Dkt. 53 at 17). Breach of fiduciary duty only sounds in contract if it is based on a contractual right. (*Kangarlou v. Progressive Title Co., Inc.*, 128 Cal. App. 4th 1174, 1179 (2005)). Here, McLeod brings forward no evidence to establish the parties incorporated express (or implied) fiduciary terms into the oral representation agreement.

### iii. Mark Negotiated His Producer Fee in Good Faith

McLeod claims:

> Defendants breached their agreement to negotiate their producers' fees in good faith with McLeod, having completely failed to even tell him what they were and

refusing to disclose them when he asked. This contractual requirement was set forth in the [Representation Agreement]. (Dkt. 53 at 17).

Mark negotiated his producer fee with Sculptor (not with McLeod), in good faith, based on his extensive experience as a producer. (Ex. 3 at 2-3; Ex. 11 at 90:23-25; 91:1-7). McLeod brings forward no evidence and cites no law to establish that Mark owed a duty to disclose the terms of his negotiations with Sculptor. McLeod brings forward no evidence to establish that McLeod requested such information. Further, even if McLeod could adduce evidence that Mark did not negotiate with Sculptor in good faith (which Defendants specifically deny and Sculptor explicitly refutes), McLeod's selective invocation of the lapsed RA is misplaced: Sculptor was not involved with *Police Station* until Mark recruited Sculptor in 2016. (*Id.*)

### B. McLeod Does Not Establish That Mark Owed a Fiduciary Duty or That a Fiduciary Duty Was Breached

McLeod cannot be permitted to proceed to trial on a Breach of Fiduciary Duty theory because McLeod fails to make any showing sufficient to establish the essential elements of his claim (*See Celotex*, 477 U.S. at 322). McLeod cites no legal authority to establish a fiduciary relationship between a producer and a screenwriter. Moreover, McLeod has adduced no evidence to establish that Mark knowingly undertook to act on behalf of and for the benefit of McLeod. (*See City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008)). McLeod points to no contractual basis to hold Mark to the standard of a fiduciary. Here, Mark's only

undertaking was to produce *Police Station* draft into a motion picture, which he did successfully. (Ex. 10 at 27:3-16; Ex. 3 at 2-3).

### i.     McLeod's Breach of Fiduciary Duty Claim Is Baseless

McLeod's claim relies exclusively on his own opinion and the opinion of his purported expert, David R. Ginsburg, who has never worked as a talent manager and who has never produced a theatrical film. (Ex. 23 – Ginsburg Report). McLeod argues that if only he had known the budget for *Police Station*, he could have earned more money. (Dkt. 53 at 18). But neither McLeod nor Ginsburg point to any facts to support this theory.

McLeod got the best available deal for *Police Station.* (Ex. 12 at 78:20). Defendants argue it was Sugarman's (McLeod's attorney) responsibility to negotiate McLeod's fee when the budget for *Police Station* increased because that is what McLeod expressly instructed Defendants he wanted. After McLeod's January 25, 2018, Sculptor option agreement lapsed, Eric emailed McLeod (a) to inform McLeod Sculptor wished to extend the option, and (b) to confirm McLeod had not optioned *Police Station* elsewhere. (Ex. 24 – EW email to KM). McLeod responded: "[Sculptor] can go ahead and send the offer directly to Matt Sugarman and ***I will take direction from him***." (*Id.*) (Emphasis added.)

McLeod not only empowered Sugarman to negotiate with Sculptor, McLeod also deferred to Sugarman's "direction," not to Eric or ZGM. (*Id.*) The ensuing negotiations between Sugarman and Sculptor resulted in McLeod's March 6, 2020,

Option Agreement (Ex. 5). Sculptor, in fact, sought to reduce McLeod's fee below what was previously agreed to in 2014 and 2016. (Ex. 14 at 1; Ex. 12 at 40).

Any suggestion McLeod could have earned a higher fee is not based in fact; it is pure speculation. McLeod has adduced no evidence that Sculptor was willing to pay more or that any other buyer wanted his *Police Station* draft.

### ii. Mark Received Due Credit for Creating Police Station

McLeod claims Mark "created" the chain-of-title issue that resulted in Sculptor's attorney requesting the ARSPA on September 24, 2020, but Mark's conduct is immaterial. (Dkt. 53 at 15.) In the RA—which was in effect when Eric sent McLeod the *Police Station* concept in 2011—McLeod agreed to share "story by" credit for projects based upon ZGM concepts (Ex. 1). McLeod does not dispute he based *Police Station* on ZGM's concept, or that the RA was effective. (Ex. 10 at 227:10-21; Ex. 10 at 37:21-25; 38:1-3). Thus, Mark did not create a chain-of-title issue; McLeod expressly agreed to share "story by" credit. (Ex. 1).

Thereafter, McLeod agreed repeatedly—including in the March 6, 2020, Option Agreement and subsequent ARSPA—that, "[w]riting credit [for *Police Station*] shall be determined and accorded according to the WGA…." (Ex. 5 at 8; Ex. 6 at 7). Once Joe Carnahan, a WGA member, agreed to rewrite McLeod's screenplay, the project automatically went to WGA arbitration. (Ex. 10 at 223; Ex. 3 at 3).

There, WGA did not consider written agreements; WGA only considered original writings. (Ex. 10 at 224:13-22; Ex. 3 at 3). Based upon those submissions, WGA awarded shared "story by" credit to Mark and McLeod. The parties' desires and opinions are irrelevant, and Mark's conduct was not material.

### C. McLeod Fails to Meet His Burden to Establish a Breach of the Implied Covenant of Good Faith and Fair Dealing as a Matter of Law

McLeod cannot be permitted to proceed to trial on a claim alleging a breach of the implied covenant of good faith and fair dealing. McLeod fails to make any showing sufficient to establish the essential elements of his claim (*See Celotex*, 477 U.S. at 322). McLeod again makes no effort to set forth a legal standard or to apply the law to the facts to meet his burden. Instead, McLeod relies on unsupported conclusions and opinions to attempt to manufacture immaterial factual disputes.

First, as stated, *supra*, it is not disputable that Sugarman handled the negotiations that resulted in the March 6, 2020, Sculptor option agreement, or that ZGM supported Sugarman in those efforts. (Ex. 24). Sugarman negotiated directly with Warren Goz, Sculptor's principal, and Katherine Imp, Sculptor's attorney. (Ex. 14). Supported by ZGM, Sugarman successfully prevented Sculptor from securing deal terms that were less favorable to McLeod. (Ex. 14.)  McLeod has adduced no evidence to support his unsubstantiated allegation that, "the purchase price element of the deal was the responsibility of Eric and Mark, not Sugarman." (Dkt. 53 at 19).

Next, it is not disputed that Mark informed McLeod the budget for *Police Station* could rise to $10,000,000. McLeod testified, "Mark discussed 3 to 10 [million] as a potential budget." (Ex. 10 at 118:3-6). Nor is it disputed that Eric informed Sugarman, on December 15, 2016, that ZGM had secured financing for *Police Station* up to $20,000,000. (Ex. 13). McLeod's characterization that the financing commitment was not "official" misconstrues Eric's testimony. (Dkt. 53 at 19). Eric merely draws a distinction, stating the financing commitment from Sculptor is not the same as "an official budget." (Ex. 17 at 55:13-18).

Finally, McLeod again injects his and Ginsburg's unsupported opinion that, based on the budget for *Copshop* in September 2020, including fees paid to producers, McLeod "and his managers and lawyers would and could have obtained a fee much higher than the $125,000 he earned." (Dkt. 53 at 19-20). There is no evidence to support this conclusion, only direct evidence that refutes it. First, Sculptor testified there was no correlation between ZGM's producer fee and McLeod's fee. (Ex. 11 at 111:9-24). Also, Sugarman testified McLeod's deal, "was the best we could do at the time." (Ex. 12 at 78:20).

**D.  McLeod Has Not Satisfied His Burden to Proceed on a Claim of Fraud or Concealment**

McLeod cannot be permitted to proceed to trial on a Fraud and Concealment theory. McLeod fails to make any showing sufficient to establish the essential elements of his claim. (*See Celotex*, 477 U.S. at 322). In fact, McLeod fails to

address any of the essential elements of the claim. Again, McLeod ignores the law; fails to apply the law to the facts; and fails to adduce evidence of a material fact in dispute.

First, whether Mark knew the budget for *Copshop* in September 2020 is immaterial. Mark testified that in September 2020:

> [I]t wasn't clear to me what the budget was going to be. They were trying to reduce it. They kept switching it around. I mean, it kept switching around up through into production, I believe. But I was – I was no longer involved at some point on the budget conversations. (Ex. 20 at 111:11-16).

Regardless of what budget documents Mark received or when, the budget was still subject to change in September 2020. McLeod cites no legal authority to establish that Mark had a duty to disclose the budget. And McLeod has adduced no evidence to establish that McLeod could have earned a larger fee had he known the budget for *Copshop* in September 2020.

Second, McLeod's claim for damages remains unsupported and speculative. Specifically, McLeod claims signing the ARSPA impacted his "contingent compensation." (Dkt. 53 at 20). The ARSPA defines "contingent compensation" as a share of "net profits." (Ex. 6 at 2). Yet, McLeod concedes he has received no compensation for net profits from *Copshop*. (Ex. 10 at 306:10-11). There were no

profits; the film did not perform. (Ex. 11 at 113:14-18)[1]. Thus, McLeod cannot establish any damages.

Finally, McLeod erroneously claims the ARSPA "served as the basis for the WGA's award of shared story by credit." (Dkt. 53 at 20). Except WGA does not consider contracts, only original writings. (Ex. 10 at 224:13-22; Ex. 3 at 3)

### E. McLeod's Allegations Sounding in Quantum Meruit are Unsupported

McLeod cannot be permitted to proceed to trial under a quantum meruit theory. Again, McLeod cites no legal authority setting forth the elements of his alleged claim. Nor does McLeod cite any facts to attempt to establish the elements of a claim. McLeod does not address the Motion in any meaningful way. Instead, McLeod offers unsupported factual allegations and speculative conclusions without citations. More specifically, there is no evidence (a) McLeod could have earned more money for *Police Station*, or (b) that Mark's compensation as a producer was paid at McLeod's expense. Again, there was no correlation between Mark's fee and Mcleod's. (Ex. 11 at 111:9-24). Thus, a rational trier of fact would not be able to find for McLeod on this claim.

### III. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted.

---

[1] The worldwide box office for *Copshop* was $6.8M. (www.boxofficemojo.com).

Dated: November 9, 2023

BARTA | TATE

By: */s/ Robert M. Barta*
　　Robert M. Barta
　　Gregory T. Goldberg
　　Attorneys for Defendants,
　　MARK WILLIAMS FILMS, LLC d/b/a
　　ZERO GRAVITY MANAGEMENT,
　　MARK WILLIAMS and ERIC
　　WILLIAMS