UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

 Melissa H. Kunig                                                    N/A
Deputy Clerk                                                Court Reporter

Attorneys Present for Plaintiff:                Attorneys Present for Defendant:

Not Present                                                Not Present

**PROCEEDINGS: ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT [39]**

 Before the court is Defendants Zero Gravity Management ("Zero Gravity"), Mark Williams, and Eric Williams' (collectively, "Defendants") Motion for Summary Judgment ("Motion"). (Dkt. 39.) Plaintiff Kurt McLeod ("McLeod") opposes, and the matter is fully briefed. (*See* Dkts. 40-43, 47, 53, 56-59.) Based on the state of the record, as applied to the applicable law, the court **GRANTS** the Motion.

I.     **Factual Background[1]**

 In March 2011, McLeod entered into a written representation agreement with Zero Gravity under which Zero Gravity would serve as McLeod's "manager as a writer, director,

---

[1] McLeod relies, in part, on an expert report submitted by a former executive, law professor, and transactional attorney in the entertainment sector. (Dkt. 52-3.) The court notes that, to the extent McLeod offers this report to assert legal arguments or for purposes of its recitation of deposition testimony and documents in this case, the court finds admitting such matters into evidence via an expert report improper. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999) ("[A]n expert report cannot be used to prove the existence of facts set forth therein.") (citations omitted); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019) ("A party's own speculation is insufficient to create a genuine issue of material fact, and a party

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

and/or producer." ("Written Agreement"). (Dkt. 57 ("SUF") Nos. 1; 30.)[2]  In any case, Williams is the managing member of Zero Gravity[3] and his brother Eric Williams is an independent contractor for Zero Gravity. (Dkt. 40, Exh. 3 ¶¶ 5, 12.)  An entertainment transactional attorney unrelated to Zero Gravity and the Williams also represented McLeod from 2014 through 2020. (*Id.* Nos. 10, 12.)

The term of the Written Agreement ran for two years, from March 25, 2011, through March 25, 2013. (SUF No. 2.)  In the Written Agreement, McLeod agreed to share "story by" credit with Zero Gravity, "in the event a project is developed based on a concept supplied by [Zero Gravity]." (*Id.* No. 3.)  The Written Agreement also provided that Zero Gravity retained the right to produce and/or package McLeod's projects and earn compensation from those efforts, provided doing so would not create an additional financial obligation for McLeod over and above McLeod's obligation to pay Zero Gravity's commission. (*Id.* No. 4.)  It also required Zero Gravity to negotiate producer's fees and credits "in good faith" with McLeod. (*Id.* No. 32.)

---

cannot make it sufficient simply by finding an expert who is willing to assume its correctness.") (citation omitted); *see also United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmiss[i]ble.") (citation omitted).
[2] In determining the record in this matter, the court relies on the admissible evidence cited in the parties' respective Statements and facts to the extent admittedly undisputed by the parties, as opposed to the parties' characterizations of the evidence submitted to the court. *See* L.R. 56-4. In making this determination, the court has considered Defendants' Statement of Uncontroverted Facts, (Dkt. 42), McLeod's Statement of Genuine Disputes in Response to Defendants' Statement, (Dkt. 53-1), Defendants' Response to McLeod's Statement, (Dkt. 57), and the underlying evidence.
[3] Mark Williams denies acting as a manager since 2006. (*Id.* ¶ 8.)  Conversely, McLeod testified Mark Williams told him he was his "manager" explicitly at some point either during the term of the Written Agreement or "after." (Dkt. 53-4, Exh. D at 63:18-64:16.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

In March 2011, Zero Gravity provided McLeod with the concept for *Police Station*,[4] which was written by Mark Williams.  (*Id.* Nos. 5-6.)  That concept reads as follows:

> ***The Police Station***
> Very contained Action-Thriller
> Our guy has issues.  Mental and financial.  And he's crossed the wrong people.  A hitman, who has his own issues . . . Having previously screwed up a past job . . . Must kill our guy by morning.  Or he will die.  After the first bullet misses . . . Our guy decides to get himself arrested . . . That way he'll be safe behind bars.  So, he beats on a cop.  Smashes into a cop car.  Etc.  Our guy is arrested.  And to his dismay . . . The hitman is arrested as well . . . On purpose.  As he intends to finish the job tonight . . . Even if it has to happen in the police station.  Cat and mouse between them in the police station overnight.

(Dkt. 40-3 ¶ 16.)  McLeod wrote a screenplay based on *Police Station*; the parties do not dispute that, while he shared credit with others, McLeod wrote the draft of the original screenplay document, subject to certain revisions by Joe Carnahan.[5]  (*Id.* No. 31; *see also* Dkt. 40-3 ¶ 17.)

After the Written Agreement lapsed in March 2013, Zero Gravity continued to represent McLeod pursuant to an oral agreement.  (*Id.* No. 7.)  As with the Written Agreement, Plaintiff takes the position that the Williams served as McLeod's manager as individuals.  (*Id.* No. 30.)  Regardless, McLeod testified that he did not "recall any conversation where Mark or Eric would say to me, [a]re we continuing . . ." but he did "recall Eric speaking to me using the word 'manager' or 'manager'" and, either before or after the expiration of the Written Agreement,

---

[4] The parties refer to this work as both *Police Station* and *Copshop* interchangeably.  The court uses "*Police Station*" within this Order for the sake of consistency.

[5] At oral argument, the parties agreed McLeod wrote the original draft and several other drafts of the screenplay.  The parties further agreed Joe Carnahan rewrote portions of McLeod's draft; Plaintiff's counsel stated Carnahan rewrote approximately 1/3 of the screenplay, a figure to which Defendants' counsel submitted they could not commit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                           Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

"Mark specifically and explicitly stating to me, 'I am your manager.'" (Dkt. 53-4, Exh. D at 63:18-64:16.) However, McLeod also testified he "d[id] not believe" himself, Eric Williams, Mark Williams, or Zero Gravity were "bound by all of the terms in [the Written] [A]greement following the expiration of it."[6] (Dkt. 47 at 65:12-14, 68:5-6.)

Zero Gravity held option rights *Police Station* from McLeod from 2014 through approximately October 2016. (SUF No. 8.) Mark Williams worked as a producer to package *Police Station*, and was the individual that "optioned the rights to *Police Station*." (Dkt. 40-3 ¶¶ 18-19; SUF No. 9.)

In 2014, Mark Williams informed McLeod the budget for *Police Station* would potentially be between $3 and $10 million; Eric Williams placed this number somewhere between $2 and $4 million. (SUF Nos. 11; 35.) McLeod testified he never received further updates from Defendants regarding the budget for *Police Station*. (*Id.* No. 36.) The most recent budget for *Police Station* to which the parties refer was approximately $43.5 million pursuant to budget document dated September 10, 2020. (*Id.* No. 38.)

On July 5, 2016, Mark Williams became aware of a budget document totaling $12,966,397.[7] (*Id.* No. 37.) "[S]ometime" in September of that year, Mark Williams recalled seeing a budget of around "42 million," but he remembered he did not inform McLeod of this. (*Id.* No. 38.)

On December 15, 2016, Eric Williams sent McLeod's attorney an email indicating actor Gerard Butler was involved with *Police Station* and that financing up to $20,000,000 was available. (*Id.* No. 15.) Eric Williams testified "financing" in this context is not the same as an

---

[6] The parties dispute whether this evidence of the oral agreement incorporates the "good faith" negotiation term included in the Written Agreement; the court notes the evidence cited does not squarely address the issue. (*Id.* No. 32.)

[7] It appears from the submitted deposition excerpts cited by the parties, and Defendant submits, that Mark Williams was never asked at his deposition whether he told McLeod of this. (*See id.* No. 37.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                        Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

"official budget." (*Id.* No. 39.)  Eric Williams did not recall whether he informed McLeod about the budget for *Police Station* on a date after he sent that email on December 15, 2016. (*Id.* No. 40.)

Every Option Agreement and the Restated Screenplay Purchase Agreement signed by McLeod for *Police Station* stated that writing credit was subject to Writers Guild of America ("WGA") arbitration and included a purchase price of 2.5% of the budget, subject to a floor of $75,000 and a ceiling of $125,000.  (*Id.* Nos. 13-14.)  These agreements included Option Agreements with Sculptor Media, LLC ("Sculptor") dated January 25, 2018, and March 6, 2020[8] and a September 24, 2020, Amended and Restated Screenplay Purchase Agreement with ORSD, LLC.  (*Id.* Nos. 16-18.)

Also on September 24, 2020, Sculptor's attorney raised a chain-of-title issue to McLeod's attorney regarding the rights for *Police Station*.  (*Id.* No. 20.)  McLeod testified that "Eric came to me and said that in order for this issue . . . to be resolved, I would need to sign an amendment to my contract in which Mark would receive shared story-by credit."  (Dkt. 53-4, Exh. D at 220:19-22; SUF Nos. 20, 33.)[9]

On September 28, 2020, McLeod signed an Amended and Restated Screenplay Purchase Agreement.  (*Id.* No. 21.)  This Agreement was sent to McLeod by Sculptor's attorney on

---

[8] The March 6, 2020, Option Agreement was executed subsequent to negotiations initiated by Sculptor.  (*Id.* No. 19.)

[9] To the extent Defendants object to certain statements of facts as "improper argument," (*e.g.*, *id.* Nos. 33-34, 42, 45-46), the court **OVERRULES** those objections as moot.  As noted, the court relies on the underlying evidence rather than the parties' characterizations of it in determining what constitutes a material fact for purposes of summary judgment; to the extent improper legal arguments are couched as undisputed facts, an objection to that effect is "duplicative of the summary judgment standard itself."  *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

September 27, who requested a signature the next day; however, McLeod maintains he signed it at Eric and Mark Williams' behest.[10]  (*Id.* Nos. 21, 46.)

The WGA awarded Mark Williams and McLeod shared "story by" credit for *Police Station*, and Mark Williams also received producer credit.  (*Id.* Nos. 24, 26.)  The materials submitted to the WGA included the concept for *Police Station*, McLeod's outlines, and McLeod's screenplay drafts.  (*Id.* No. 25.)  An outline written by McLeod with Mark Williams' name included in the header was also submitted but later withdrawn.  (*Id.* Nos. 25, 43.)  Mark Williams testified he "gave notes on the document" but "should not have sent it because [he] didn't write all of this document," (Dkt. 54-3, Exh. C at 69:18-19), and that the WGA later informed him they did not consider it in issuing "story by" credit, (*id.* No. 43).  The WGA also awarded "screenplay by" credit to McLeod and Joe Carnahan.[11]  (*Id.* No. 31.)

McLeod was paid $125,000 for the sale of *Police Station*; Zero Gravity received a 10% commission of $12,500.  (*Id.* No. 23.)  The September 10, 2020, budget also allocated a producer fee of $1,032,553 to Zero Gravity.  (*Id.*)  McLeod has also earned approximately

---

[10] McLeod relies, in part, on his assertion Eric Williams stated that McLeod's "contingent compensation" would "not" be reduced by sharing a "story by" credit with Mark Williams. (SUF No. 46.)  The competent evidence cited by McLeod does not support Eric Williams made an affirmative assertion to this effect, (*see id.*); nonetheless, the court finds it reasonable to infer McLeod's contingent compensation under the September 28, 2020, Agreement would remain the same for purposes of the Motion when taking the evidence in the light most favorable to McLeod as the nonmovant.

[11] It is not clear from the record whether McLeod would have also received the sole "screenplay by" credit had he received a standalone "story by" credit, but he testified his script would be treated as "original" instead of "nonoriginal" if McLeod was the only "story by" credit recipient.  (*Id.* No. 41.)  Per McLeod's deposition testimony, the threshold for Carnahan to receive "screenplay by" credit would be fifty percent if the screenplay was "original," as opposed to "a third" if "nonoriginal."  (*See* Dkt. 53-4, Exh. D at 265:23-4.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

$100,000 in residuals from Police Station.  (*Id.* No. 27.)  Mark Williams was paid $29,069 for his "story by" credit, half of which he returned to Sculptor.[12]  (*Id.* No. 29.)

## II.    Legal Standard

### A.    Rule 56 Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the case, and the "substantive law [] identif[ies] which facts are material."  *Id.*  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*

The moving party bears the initial burden of identifying the elements of the claim or defense on which summary judgment is sought and evidence that it believes demonstrates the absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party will have the burden of proof at trial, the movant can satisfy its initial burden by demonstrating that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325; *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) ("The moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact.").

---

[12] Williams submits he returned this amount so that McLeod's compensation would not be reduced; however, it is not clearly explained how Williams returning $14,534.50 ensured McLeod would receive the full amount of $125,000 given the September 2020 Amended and Restated Screenplay Purchase Agreement reduces that figure by $29,069.  (*See id.* No. 29; Dkt. 40, Exh. 6 ¶ 2(a).)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                          Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

The non-moving party then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (citation omitted); *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (In opposing summary judgment, "the non-moving party must go beyond the pleadings and by its own evidence 'set forth specific facts showing that there is a genuine issue for trial'"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1389 (9th Cir. 1990) ("The non-moving party may not oppose summary judgment by allegations but must show specific trial-worthy facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). The court must draw all reasonable inferences in the non-moving party's favor. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

Nevertheless, "inferences are not drawn out of thin air, but from evidence." *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1247 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). "[S]ummary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248 (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48; *see also United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978) ("A summary judgment cannot be granted if a genuine issue as to any material fact exists.").

In *In re Oracle Corp.*, the Ninth Circuit described the burdens of proof in the summary judgment process:

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor. In determining whether a jury could reasonably render a verdict in the non-moving party's favor, all justifiable inferences are to be drawn in its favor.

627 F.3d at 387 (citations omitted).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (citation omitted). "Where no such showing is made, the moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* (cleaned up).

**III.    Analysis**

A.    Cause of Action One: Breach of Contract

Defendants argue McLeod's breach of contract claim fails because there is no evidence the terms of the oral agreement subsequent to the Written Agreement were breached, and also assert Mark Williams was not a party to that oral agreement. (Dkt. 40 at 11-13.) McLeod asserts disputes of fact preclude finding Mark Williams was not a party to the oral agreement, and Defendants breached their agreement to negotiate producers' fees in good faith with

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

McLeod.  (Dkt. 53 at 17.)  In reply, Defendants emphasize McLeod does not establish or argue the basic terms of the oral agreement or explain how those terms were breached.  (Dkt. 56 at 2-4.)  The parties also appear to dispute whether this claim implicates fiduciary duties, and if so, whether they arise in tort rather than contract, (*compare* Dkt. 53 at 17, *and* Dkt. 56 at 3, *with* Dkt. 40 at 13.)

"[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  "The elements of a breach of oral contract claim are the same as those for a breach of written contract: a contract; its performance or excuse for nonperformance; breach; and damages."  *Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014) (citations omitted). "Under California law, a contract will be enforced if it is sufficiently definite (and this is a question of law) for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached."  *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal. App. 4th 613, 623 (1991) (citations omitted).

As an initial matter, it is undisputed Zero Gravity and McLeod, entered into an oral agreement after the expiration of the Written Agreement, (SUF No. 7); the parties dispute, however, whether that oral agreement encompassed Mark and Eric Williams as a continuation of the Written Agreement, (*id.*).  The problem with McLeod's position, however, is that the Written Agreement is titled a "Management Representation Agreement *between Zero Gravity and Kurt McLeod*", (Dkt. 59, Exh. 1 at 1 (emphasis added)), and the only mentions of Eric and Mark Williams are signatures with "Zero Gravity" listed below their names, (*id.* at 2).[13]  There is insufficient indication that Eric and Mark Williams entered into the Written Agreement with McLeod in their personal capacities.  *See Smith v. Simmons*, 2007 WL 2815033, at *4 (E.D. Cal. Sept. 25, 2007) (concluding individual "cannot be a proper party to [the] [p]laintiff's

---

[13] Importantly, Plaintiff does not seek to hold Mark or Eric Williams liable under an alter ego or other veil piercing liability; as far as the record indicates, the term itself was first mentioned by Defendants at oral argument.

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

breach of contract cause of action" where he "is not a named party to the [] [a]greement and did not sign it in his individual capacity"); *see also* Cal. Com. Code § 3402(b)(1) ("If the form of the signature shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument."). Because of this, McLeod's theory that the oral agreement encompassed Eric and Mark Williams in their personal capacities as a continuation of the Written Agreement, (SUF No. 7), is likewise untenable.  Accordingly, the court **GRANTS** summary judgment in favor of Eric and Mark Williams on this claim.

As noted, it is undisputed Zero Gravity and McLeod were parties to an oral agreement under which Zero Gravity continued to serve as McLeod's manager.  McLeod argues it breached that oral agreement by (1) violating a fiduciary duty; and (2) breaching the provision requiring Zero Gravity to negotiate producers' fees in good faith with McLeod.  (Opp. at 17.) The court finds McLeod's first argument is better considered in the context of his breach of fiduciary duty claim given it relies on his assertions Defendants owed him a fiduciary duty and not a specifically identified contractual provision.  *Cf. MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1100 (N.D. Cal. 2017) ("Conduct amounting to a breach of contract is not also tortious unless the conduct 'violates an independent duty arising from principles of tort law.'") (quoting *Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal. 4th 503, 514 (1994)).  McLeod points to no evidence in support of his second argument, (*see* Opp. at 17), and the court agrees with Defendants the record indicates no breach of this provision.  The parties appear to assume the oral agreement incorporated the Written Agreement's provision that "producer's fees and credits will be negotiated in good faith at the time of sale," (Exh. 1 at 2 ¶ 3; *see also* Opp. at 17; Reply at 3-4), but the record lacks evidence indicating Zero Gravity negotiated a producer's fee in bad faith, nor does McLeod point to evidence of Zero Gravity's negotiations of producer's fees in the record.  *See Celotex*, 477 U.S. at 323 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                           Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

which that party will bear the burden of proof at trial.").  Accordingly, the court **GRANTS** summary judgment in favor of Zero Gravity on this claim.[14]

B.      Second Cause of Action: Breach of Fiduciary Duty

Defendants contend McLeod's breach of fiduciary duty claim fails because Mark owed him no fiduciary duty as merely a producer, and because Zero Gravity and Eric did not breach any fiduciary duties they may have owed to McLeod.  (Dkt. 40 at 13-16.)  McLeod counters disputed issues of fact prevent finding Mark Williams was his manager, and Defendants breached their fiduciary duty to McLeod by failing to disclose the budget increase, negotiate a higher fee, and submitted false materials during the WGA's decisionmaking process on writing credits.  (Dkt. 53 at 16-19.)  In reply, Defendants maintain McLeod has no evidence a fiduciary duty was breached, and notes McLeod cites no authority establishing a fiduciary duty between a producer and a screenwriter.  (Dkt. 56 at 4-7.)

"The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach."  *Thomson v. Canyon*, 198 Cal. App. 4th 594, 604 (2011) (quoting *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483 (1998)).  "A fiduciary relationship is created where a person reposes trust and confidence in another and the person in whom such confidence is reposed obtains control over the other person's affairs."  *Lynch v. Cruttenden & Co.*, 18 Cal. App. 4th 802, 809 (1993) (citation omitted).  "[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.,* 43 Cal. 4th 375, 386 (2008) (citation

---

[14] California authority indicates "a breach of the implied covenant is necessarily a breach of contract," *see Digerati Holdings, LLC v. Young Money Ent., LLC*, 194 Cal. App. 4th 873, 885 (2011); on this note, the court finds Defendants are entitled to summary judgment on that claim as well for the reasons stated later in this order.

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                                 Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

omitted).  "The mere placing of a trust in another person does not create a fiduciary
relationship." *Zumbrun v. Univ. of S. Cal.*, 25 Cal. App. 3d 1, 13 (1972) (citation omitted).

At the outset, the parties agree "a fiduciary relationship likely exists between a manager
and client."  (Mot. at 14; *accord* Opp. at 17.); *see also Marathon Ent.*, 42 Cal. 4th at 980 n.1
(noting the court "received dozens of letters from personal managers working in the
entertainment industry who suggest they owe a fiduciary duty to their clients to procure
employment" but not opining on the issue).  However, the court agrees with Defendants there is
no triable or disputed issue of fact that Mark Williams did not serve as McLeod's manager such
that he owed him a fiduciary duty.  The only evidence cited by McLeod is his deposition
testimony in which he "recall[ed] Mark specifically and explicitly stating to me, I am your
manager," but that he "can't recall the exact date of this," (Dkt. 53-4, Exh. D at 63:18-64:16),
and an undated screenshot from the WGA website listing his "role" as "manager," (*id.*, Exh. A).
Importantly, the record does not indicate Mark Williams actually performed services as a
manager on behalf of McLeod; it is limited to his work as a producer of *Police Station*.  *See
generally Marathon Ent., Inc. v. Blasi*, 42 Cal. 4th 974, 984 (2008) ("Personal managers
primarily advise, counsel, direct, and coordinate the development of the artist's career.  They
advise in both business and personal matters, frequently lend money to young artists, and serve
as spokespersons for the artists.") (quoting *Park v. Deftones*, 71 Cal. App. 4th 1465, 1469-70
(1999)).  In light of this evidence, the Written Agreement being between McLeod and Zero
Gravity only, and the parties' understanding the subsequent oral agreement was a continuation
of the Written Agreement, McLeod's undated testimony alone is insufficient to create a triable
or disputed issue of fact as to whether Mark Williams actually served as McLeod's manager,
and McLeod does not argue that he owed him a fiduciary duty for another particular reason.
*See Persson v. Smart Inventions, Inc.*, 125 Cal. App. 4th 1141, 1160 n. 8 (2005) ("The key
factor in the existence of a fiduciary relationship lies in control by a person over the property of
another.") (quoting *Vai v. Bank of Am.*, 56 Cal. 2d 329, 338 (1961)); *see also Addisu v. Fred
Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is
merely colorable or not significantly probative does not present a genuine issue of material
fact.") (citation omitted).

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                                  Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

Turning to Zero Gravity and Eric Williams,[15] McLeod's claim for breach of fiduciary duty is premised on his contentions that (1) Zero Gravity and Eric Williams failed to disclose the budget increase to him, which rendered McLeod's previously-agreed upon fee insufficient; and (2) the improper submission of the outline to the WGA with Mark Williams' name on it affected McLeod's ability to obtain "story by" credit.  (Opp. at 18-19.)

The court finds, however, that the evidence in the record does not support either theory.  To be sure, McLeod's expert opines McLeod could have "respond[ed] with a demand for a higher screenplay purchase price" from "about $500,000 to $750,000" based on the budget, (Dkt. 53-2, Exh. A at 9-10), and it is undisputed McLeod was never told the budget for *Police Station* settled at roughly $43.5 million, having received estimates varying from $3 million to $10 million in budget and "up to $20 million" in "financing," (SUF Nos. 11, 35-38).  The problem is that neither the evidence nor McLeod's arguments to the contrary, explains or supports a finding that this budgetary increase necessarily means McLeod would have received additional compensation, as opposed to the directing of that funding to other expenses on the movie project.  It is also notable that McLeod was represented by outside counsel in these fee negotiations.  (SUF Nos. 10, 12.)  In the absence of more concrete evidence or further argument from McLeod indicating the specific fiduciary duty he contends Eric Williams and Zero Gravity breached, McLeod's claim he should have been paid more based solely on the fact the film's budget expanded is simply too speculative to indicate they breached a fiduciary duty owed to McLeod and consequently caused him to incur damages.  *See Tribeca Companies, LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1102 (2015) (noting an "essential element" of a claim for breach of fiduciary duty "is that a defendant's alleged misconduct was the cause in fact of the plaintiff's damage"); *Bryant v. Mattel, Inc.*, 2010 WL 11463864, at *11 (C.D. Cal. Oct. 29, 2010) ("[A] fiduciary duty is not breached by any conduct inimical to the interests of the party to whom the duty is owed.  The specific duty assumed by the fiduciary must be

_____

[15] The parties address Zero Gravity and Eric Williams together with respect to this claim, (*See* Mot. at 15-16; Opp. at 18-19; Reply at 5-7); the court will accordingly consider them as both owing a fiduciary duty to McLeod as his manager or by virtue of performing the work customarily associated with a talent manager on his behalf.

_____

**CIVIL MINUTES – GENERAL**

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

breached.") (citing *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1534 (2006)); *see also Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("Mere allegation and speculation do not create a factual dispute for purposes of summary judgment.") (cleaned up).

Regarding the WGA "story by" credit, the undisputed evidence shows the outline submitted by Mark Williams with is name on it was withdrawn from the WGA's consideration. (SUF Nos. 25, 43.)  While McLeod argues this "infected the WGA process," he points to no evidence in the record rebutting Defendants' evidence indicating the WGA does not consider withdrawn materials in awarding "story by" credits.[16]  (*See* Opp. at 19; SUF No. 43.)[17]  In short, to the extent a manager submits an outline to the WGA that improperly lists someone else as the author of a work in its crediting process, there is no evidence in the record the improper outline was considered in this case.  The court finds that this lack of evidence precludes a finding a fiduciary duty was breached.  *See Tribeca Companies*, 239 Cal. App. 4th at 1102; *Bryant*, 2010 WL 11463864, at *11; *see also Loomis*, 836 F.3d at 997.

For these reasons, the court finds there is no genuine dispute of material fact as to McLeod's breach of fiduciary duty claim and accordingly **GRANTS** summary judgment in favor of Defendants on this claim.

_____

[16] Relatedly, as Defendants note, (Reply at 6), the Written Agreement provides "in the event a project is developed based on a concept supplied by ZG [Zero Gravity], you [McLeod] hereby agree to a shared story by credit," (cite Ex. 1 at 2 ¶ 4), which would presumably include the *Police Station* concept written by Mark Williams.  The court notes that the incorporation of this term into the undisputed subsequent oral agreement is not definitively stated or argued by the parties, but the court nevertheless notes this fact would further support Defendants' position to the extent the oral agreement included this provision.

[17] McLeod's expert opinion does not squarely address this issue; he relatedly opines this "betokens the height of unethical conduct contrary to the interests of a client" but this does not clearly express a view on whether the WGA would consider withdrawn materials.  (*See* Dkt. 53-2, Exh. A at 7.)

_____

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                          Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

C.     Third Cause of Action: Fraud and Concealment

Defendants argue McLeod's fraud and concealment claim fails because of a lack of evidence they withheld budget information before McLeod signed the September 2020 Amended and Restated Screenplay Purchase Agreement, and McLeod's damages are too speculative.  (Dkt. 40 at 20-23.)  McLeod asserts summary judgment on this claim is precluded based on the $43.5 million budget that was concealed from him during the negotiations and the chain of title issue Defendants assertedly manufactured to trigger renegotiations in September 2020.  (Dkt. 53 at 20-21.)  In reply, Defendants maintain Mark Williams' knowledge of the budget in September 2020 was immaterial, and his sought damages are unsupported and speculative.  (Dkt. 56 at 8-10.)

"The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage."  *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (citing *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996)).  "Under California law, a concealment under the first prong can constitute actionable fraud only when the defendant had a duty to disclose what was concealed.  This duty arises in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact."  *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267-68 (C.D. Cal. 2007) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)).

McLeod's reliance on the chain of title issue falls short.  McLeod points to no evidence indicating the chain of title issue was false, and the record similarly does not indicate the issue was triggered at Defendants' behest.  McLeod relies on evidence that, taken in his favor, indicates Eric Williams told McLeod he needed to sign the September 2020 Amended and Restated Screenplay Purchase Agreement to resolve the issue and that this required him to share "story by" credit with Mark Williams.  (SUF Nos. 20-21, 33, 46.)  But there is no indication in

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

the record that Defendants created the chain of title issue or that it truly was a falsity. As Defendants note, the first mention of it in the record is an email from Sculptor's counsel noting McLeod's "screenplay is based on an original story written by [McLeod] and Mark [Williams]" which meant the parties "need[ed] to modify the chain-of-title documentation to reflect this change," (Dkt. 59, Exh. 15), and the record does not indicate this was a false statement attributable to Defendants. As far as McLeod's fraud claim relies on the chain of title issue, the court finds it is unsustainable for lack of a misrepresentation.

Separately, the court finds McLeod's argument based on Defendants' nondisclosure of the $43.5 million budget figure fails for the reasons discussed above; namely, the evidence nor McLeod's arguments sufficiently show the damages he sustained based on that nondisclosure or that the increased budget caused those damages. *See Williams v. Wraxall*, 33 Cal. App. 4th 120, 132 (1995) ("A 'complete causal relationship' between the fraud or deceit and the plaintiff's damages is required.") (quoting *Garcia v. Superior Court*, 50 Cal. 3d 728, 737 (1990)) (citation omitted); *accord City Sols., Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 840 (9th Cir. 2004).

    D.    <u>Fourth Cause of Action: Breach of the Implied Covenant of Good Faith and Fair Dealing</u>

Defendants assert McLeod's breach of the implied covenant of good faith and fair dealing claim fails because there is no evidence they acted unfairly towards McLeod or against his best interests, noting McLeod was represented by his own counsel in the negotiations. (Dkt. 40 at 16-20.) McLeod maintains Defendants' argument is based entirely on disputed facts regarding who bore responsibility for negotiating the purchase price in connection with the March 2020 Option Agreement, which was deflated in comparison the overall budget and producers' fees of which McLeod had no awareness. (Dkt. 53 at 19-20.) In reply, Defendants argue the evidence is lacking as to them acting in breach of the covenant of good faith and fair dealing, to the extent it is implicated. (Dkt. 56 at 7-8.)

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

  "The implied promise [of good faith and fair dealing] requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *Avidity Partners, LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1204 (2013) (quoting *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809, 818, (1979)). "In essence, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Id.* (quoting *Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1153 (1990)). It is "universally recognized" that "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Id.* (quoting *Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc.*, 2 Cal. 4th 342, 373 (1992)).

  Defendants refer to evidence, in particular an email from November 2019 from McLeod to Eric Williams, indicating McLeod wanted Sculptor to "go ahead and send the offer directly to [McLeod's outside counsel] and [McLeod] will take direction from him" in connection with the March 6, 2020, Option Agreement with Sculptor that included McLeod's $125,000 fee. (Dkt. 59, Exh. 24.) The court agrees with Defendants that McLeod has produced no evidence shifting the burden of negotiating his fee to Defendants instead in light of the fact he indicated his desire his outside counsel handle the negotiations. (*See* Reply at 7; *see generally* Opp.) His claim, then, is largely premised on his argument above that, if he was told about the $43.5 million budget, he and his representative could have negotiated a higher fee. However, as stated, this argument falls short because it is too speculative; McLeod's evidence does not indicate why a higher budget necessarily would lead to that increased fee. *See Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (holding a plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing "must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement"); *see also Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 962 (9th Cir. 2001)

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                   Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

(holding damages based on future profits party hoped to earn from purchase of parcel of land "were too speculative to satisfy California's longstanding reasonable certainty requirement" where the "breach alleged was simply [counterparty's] failure to negotiate"). Accordingly, the court **GRANTS** summary judgment in favor of Defendants on this claim.[18]

E.       Cause of Action Five: Quantum Meruit

Defendants contend McLeod's quantum meruit claim fails because the parties understood that McLeod may not be paid for writing *Police Station* in the event the screenplay would not sell. (Dkt. 40 at 23-25.) McLeod's argument rests on his assertion that Mark Williams and Zero Gravity earned their fees even though they concealed the enlarged budget from McLeod which prevented him from negotiating a bigger fee. (Dkt. 53 at 21.) In reply, Defendants urge that McLeod fails to meaningfully address the arguments raised in their moving papers, and the argument McLeod offers instead is based on speculation and unsupported allegations. (Dkt. 56 at 10.)

"Under California law, to succeed on a quantum meruit claim, a party must show (1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4) that they are unpaid." *Finato v. Fink*, 803 F. App'x 84, 87 (9th Cir. 2020) (citing *Haggerty v. Warner*, 115 Cal. App. 2d 468, 475 (1953)); *see also Chodos v. Borman*, 227 Cal. App. 4th 76, 96 (2014) ("Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.'") (quoting *Long v. Rumsey*, 12 Cal. 2d 334, 342 (1938)). "To recover in quantum meruit, a party need not prove the existence of a contract . . . but it must show the circumstances were such that the services were

_____

[18] As to Mark and Eric Williams specifically, summary judgment on this claim is appropriate for the additional reason that "[w]ithout a contractual relationship, [plaintiffs] cannot state a [claim] for breach of the implied covenant." *See Bayat v. Bogart*, 2012 WL 12906126, at *3 (C.D. Cal. Feb. 27, 2012) (quoting *Smith v. City and County of San Francisco*, 225 Cal. App. 3d 38, 49 (1990)).

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

rendered under some understanding or expectation of both parties that compensation therefor was to be made." *Chodos*, 227 Cal. App. 4th at 96 (citations and internal quotation marks omitted); *see also Day v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 248 (2002) ("[I]n order to recover under a quantum meruit theory, a plaintiff must establish *both* that he or she was acting pursuant to either an *express or implied request* for such services from the defendant and that the services rendered were *intended to and did benefit* the defendant.").

Initially, McLeod does not address Defendants' contention because he sold the screenplay "on spec," i.e., on the understanding he might never receive payment for it, that his claim fails. (*Compare* Mot. at 24 (citing Dkt. 59, Exh. 10 at 241), *with* Opp. at 10.)  There is support for Defendants' argument. *See* 1 Witkin, Summary 11th Contracts § 1073 (2023) ("To entitle the plaintiff to recover, the circumstances must be such as to warrant the inference that it was the expectation of both parties during the time that the services were rendered that compensation should be made.").  Separately, McLeod provides no ascertainable indication Defendants received money from his work product unjustifiably.  McLeod's assumption that he would have negotiated a higher fee had he known of the higher budget, even if credited, is not evidence Defendants wrongfully obtained some additional degree of money from his work product.  As noted, there is no evidence that they personally gained any additional fees from the fact McLeod did not negotiate a higher fee for himself; the evidence shows neither the quantum of his assertedly increased share of the budget nor how that money flowed to Defendants as opposed to other expenses detailed in the budget. *See Ochs v. PacifiCare of California*, 115 Cal. App. 4th 782, 794 (2004) ("To recover on a claim for the reasonable value of services under a quantum meruit theory, a plaintiff must establish both that he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant.") (citation omitted).   Finally, as an alternative basis, the parties' acknowledgement contracts govern McLeod's compensation for his work on *Police Station* precludes recovery under a quantum meruit theory. *See In re De Laurentiis*, 963 F.2d at 1273 ("The whole point of quantum meruit recovery is to compensate plaintiffs who have provided a benefit to defendants but who do *not* have a contract—express or implied—with those defendants."); *cf. Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1419-20 (1996) (stating "[t]he trial court violated the rule that equitable

**CIVIL MINUTES – GENERAL**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:22-cv-01547-FWS-AGR                    Date: January 8, 2024
Title: Kurt McLeod v. Zero Gravity Management *et al.*

entitlement to a quantum meruit payment is not implied where the parties have actual contract terms covering payment," and noting "[w]hen parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract.").  Accordingly, the court **GRANTS** summary judgment in favor of Defendants on McLeod's quantum meruit claim.

## IV.    Disposition

For the reasons stated, the court the Motion is **GRANTED**.  Defendant shall lodge a proposed judgment with the court within **ten (10) days** of this Order.  Plaintiffs may file objections to the form of the proposed judgment, if any, within **ten (10) days** of Defendant lodging the proposed judgment.


**IT IS SO ORDERED.**


Initials of Deputy Clerk:  mku